**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kristian E. Grube, | ) | No. CV 10-02257-PHX-NVW |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |
| | ) | |

Kristian E. Grube seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(I), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background**

   **A.    Factual Background**

Grube was born on January 26, 1963. He was 42 years old as of August 5, 2005, the alleged disability onset date. He graduated from high school in 1981 and from the Arizona Law Enforcement Training Academy in 1993. Grube was employed as a

1  Glendale City Police Officer from August 1993 through August 2005. He worked light
2  duty from 2004 to 2005 and then began medical retirement.

3        In October 2003, Grube was diagnosed with an abdominal aorta occlusion. In
4  November 2003, he had an aorta bifemoral bilateral vascular reconstructive surgery,
5  which was initially successful. About three months later, however, the bypass became
6  clogged by a blood clot, and both of Grube's legs became numb. In June 2004, the
7  surgery was repeated, following which Grube was in a coma on life support for nine days.
8  By May 2005, he had recovered enough to return to light duty.

9        In July 2005, Grube developed severe groin and abdominal pain. In August 2005,
10 treating physician Robert P. Luberto, D.O., concluded that Grube was "not able to work
11 as a police officer in the street or a desk due to chronic post-operative pain in abdomen,
12 pelvis, low back." In August 2005, Grube also began treatment for depression and
13 anxiety. In January 2006, an independent medical evaluator concluded that Grube's
14 physical condition totally and permanently prevents him from performing a reasonable
15 range of duties within the police department.

16      **B.     Procedural History**

17      On June 14, 2007, Grube applied for disability insurance benefits, alleging
18 disability beginning August 5, 2005. The application was denied on initial review and
19 again on reconsideration, after which Grube requested that his claim be heard by an ALJ.
20 On February 1, 2010, an administrative hearing was held at which Grube testified and
21 was represented by counsel. Nathan E. Dean, M.Ed., an impartial vocational expert, also
22 appeared and testified at the administrative hearing. On March 12, 2010, the ALJ issued
23 his decision that Grube was not disabled within the meaning of the Social Security Act.

24      On August 25,2010, the Appeals Council denied Grube's request for review of the
25 ALJ's unfavorable decision, making that decision the final decision of the Commissioner.
26 On October 22, 2010, Grube sought judicial review of the decision pursuant to § 205(g)
27 of the Social Security Act, 42 U.S.C. § 405(g).

28

- 2 -

1    **II.    Standard of Review**

2           The district court reviews only those issues raised by the party challenging the

3    ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court

4    may set aside the Commissioner's disability determination only if the determination is not

5    supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625,

6    630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a

7    preponderance, and relevant evidence that a reasonable person might accept as adequate

8    to support a conclusion considering the record as a whole.  *Id.*  In determining whether

9    substantial evidence supports a decision, the court must consider the record as a whole

10   and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.*

11   As a general rule, "[w]here the evidence is susceptible to more than one rational

12   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

13   upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

14          The ALJ is responsible for resolving conflicts in medical testimony, determining

15   credibility, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

16   1995).  In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

17   drawing specific and legitimate inferences from the ALJ's opinion."  *Magallanes v.*

18   *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)*.*

19   **III.    Five-Step Sequential Evaluation Process**

20          To determine whether a claimant is disabled for purposes of the Social Security

21   Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  If the ALJ determines

22   that the claimant is disabled or not disabled at any step, the ALJ does not continue to the

23   next step.  The claimant bears the burden of proof on the first four steps, but at step five,

24   the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

25   1999).

26          At the first step, the ALJ determines whether the claimant is engaging in

27   substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If so, the claimant is not

28                                          - 3 -

1   disabled and the inquiry ends.  *Id.*  At the step two, the ALJ determines whether the

2   claimant has a "severe" medically determinable physical or mental impairment.

3   § 404.1520(a)(4)(ii).  If not, the claimant is not disabled and the inquiry ends.  *Id.*  At step

4   three, the ALJ considers whether the claimant's impairment or combination of

5   impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

6   Pt. 404.  § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.

7   *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's

8   residual functional capacity and determines whether the claimant is still capable of

9   performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled

10  and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he

11  determines whether the claimant can perform any other work based on the claimant's

12  residual functional capacity, age, education, and work experience.  § 404.1520(a)(4)(v).

13  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

14  **IV.    Analysis**

15          The ALJ found that Grube meets the insured status requirements of the Social

16  Security Act through September 30, 2011, and, at step one, he has not engaged in

17  substantial gainful activity since August 5, 2005.  At step two, the ALJ found that Grube

18  had the following impairments, which are severe when they are considered in

19  combination:  peripheral vascular disease; a history of claudication with vascular disease,

20  with surgery November 10, 2003, with vascular reconstruction and a graft to his left

21  groin, then a revision in June 2004; left and right groin pain; low back pain; fatigue; sleep

22  apnea; chronic obstructive pulmonary disease; a depressive disorder; and an anxiety

23  disorder due to his physical condition and pain.  At step three, the ALJ found that Grube

24  did not have an impairment or combination of impairments that met or medically equaled

25  one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Grube does

26  not raise any issues related to the ALJ's determinations at the first three steps of the five-

27  step sequential evaluation process.

28
                                        - 4 -

1   The ALJ determined that Grube:

2   has the residual functional capacity to perform unskilled sedentary work
    with restrictions as sedentary work is defined in 20 CFR 404.1567(a).  The
3   claimant requires a sit/stand option, and he has postural limitations
    involving no crawling, crouching, climbing, squatting or kneeling, and no
4   use of the lower extremities for pushing or pulling.

5   At step four, the ALJ determined that Grube is unable to perform any of his past relevant

6   work based on his residual functional capacity.  At step five, the ALJ concluded that,

7   considering Grube's age, education, work experience, and residual functional capacity,

8   there are jobs that exist in significant numbers in the national economy that Grube could

9   perform, such as food and beverage order clerk and charge account clerk.

10          **A.      Weighing Medical Source Evidence**

11                 **1.      Legal Standard**

12          In weighing medical source opinions in Social Security cases, the Ninth Circuit

13   distinguishes among three types of physicians:  (1) treating physicians, who actually treat

14   the claimant; (2) examining physicians, who examine but do not treat the claimant; and

15   (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v.*

16   *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the

17   opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  A

18   treating physician's opinion is afforded great weight because such physicians are

19   "employed to cure and [have] a greater opportunity to observe and know the patient as an

20   individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating

21   physician's opinion is not contradicted by another physician, it may be rejected only for

22   "clear and convincing" reasons, and where it is contradicted, it may not be rejected

23   without "specific and legitimate reasons" supported by substantial evidence in the record.

24   *Lester*, 81 F.3d at 830.  Moreover, the Commissioner must give weight to the treating

25   physician's subjective judgments in addition to his clinical findings and interpretation of

26   test results.  *Id.* at 832-33.

27

28

1   Further, an examining physician's opinion generally must be given greater weight

2   than that of a non-examining physician. *Id.* at 830. As with a treating physician, there

3   must be clear and convincing reasons for rejecting the uncontradicted opinion of an

4   examining physician, and specific and legitimate reasons, supported by substantial

5   evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at

6   830-31.

7   The opinion of a non-examining physician is not itself substantial evidence that

8   justifies the rejection of the opinion of either a treating physician or an examining

9   physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may

10   also serve as substantial evidence when the opinions are consistent with independent

11   clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that

12   an ALJ may consider when evaluating any medical opinion include "the amount of

13   relevant evidence that supports the opinion and the quality of the explanation provided;

14   the consistency of the medical opinion with the record as a whole; [and] the specialty of

15   the physician providing the opinion." *Orn*, 495 F.3d at 631.

16   Moreover, Social Security Rules expressly require a treating source's opinion on

17   an issue of a claimant's impairment be given controlling weight if it is well-supported by

18   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

19   with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a

20   treating source's opinion is not given controlling weight, the weight that it will be given is

21   determined by length of the treatment relationship, frequency of examination, nature and

22   extent of the treatment relationship, relevant evidence supporting the opinion, consistency

23   with the record as a whole, the source's specialization, and other factors. *Id.*

24   Finding that a treating physician's opinion is not entitled to controlling weight

25   does not mean that the opinion should be rejected:

26   > [A] finding that a treating source medical opinion is not well-
    > supported by medically acceptable clinical and laboratory diagnostic
27   > techniques or is inconsistent with the other substantial evidence in the case

28

1

2

3

> record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

4

5

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a

6

conflict between the opinion of a treating physician and an examining physician, the ALJ

7

may not reject the opinion of the treating physician without setting forth specific,

8

legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

9

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

10

Grube contends the ALJ erred by rejecting the opinion of treating physician Ashish

11

Sachdeve, M.D. The record shows that Grube was treated by Dr. Sachdeve in September

12

and December 2007, and Dr. Sachdeve completed a Medical Assessment of Ability to Do

13

Work-Related Physical Activities on July 27, 2009. In the 2009 assessment, Dr.

14

Sachdeve opined that Grube could not perform work eight hours a day, five days a week

15

on a regular and consistent basis because of pain, fatigue, dizziness, memory problems,

16

and sweating. He described these symptoms as "moderately severe." Dr. Sachdeve

17

further opined that Grube could sit only thirty minutes at a time and walk 100 to 200 feet.

18

In reviewing Dr. Sachdeve's assessment, the ALJ stated, "These conclusions were

19

not supported by the record to this extent." The ALJ did not reject Dr. Sachdeve's

20

assessment entirely; he just did not give it controlling weight. He specifically referenced

21

Dr. Sachdeve's limited treatment of Grube for "productive cough with brown sputum for

22

4 days on September 19, 2007," his examination showing no chest pain, weakness, or

23

dyspnea, and a normal neurological examination. The ALJ provided specific, legitimate,

24

clear, and convincing reasons supported by substantial evidence in the record for

25

discounting Dr. Sachdeve's assessment of the severity of Grube's symptoms, which

26

included the length of the treatment relationship, relevant evidence supporting the

27

28

1  opinion, and consistency with the record as a whole.  Thus, the ALJ did not err by

2  discounting Dr. Sachdeve's opinion.

3        Grube also contends that the ALJ erred in weighing consulting physician opinion

4  evidence, and mentions as examples the opinions of Norman Fernando, M.D.,  Heather

5  Barrons, Psy.D., and Greg Peetoom, Ph.D.  The ALJ said that he "basically accepts the

6  findings and conclusions of the consultative examiner, Dr. Fernando."  He did not assign

7  Dr. Fernando's opinion "controlling weight," or even "great weight."  Further, he

8  summarized Dr. Barrons' and Dr. Peetoom's assessments of Grube's mental functioning

9  without expressly accepting or rejecting them.  Even if accepted, their opinions regarding

10  Grube's moderate mental impairments did not require acceptance of the hypotheticals

11  posed to the vocational expert by Grube's attorney to elicit an opinion that Grube is not

12  able to sustain any type of employment.

13        **B.**    **Subjective Symptom Testimony**

14            **1.**    **Legal Standard**

15        In evaluating the credibility of a claimant's testimony regarding subjective pain or

16  other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine

17  whether the claimant presented objective medical evidence of an impairment that could

18  reasonably be expected to produce some degree of the pain or other symptoms alleged;

19  and, if so with no evidence of malingering, (2) reject the claimant's testimony about the

20  severity of the symptoms only by giving specific, clear, and convincing reasons for the

21  rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a lack of

22  credibility finding, the ALJ is required to point to specific facts in the record that

23  demonstrate that Grube's symptoms are less severe than he claims.  *Id.* at 592.

24        To be found credible regarding subjective pain or fatigue, a claimant is not

25  required to:  (1) produce objective medical evidence of the pain or fatigue itself, or the

26  severity thereof; (2) produce objective medical evidence of the causal relationship

27  between the medically determinable impairment and the symptom; or (3) show that his

28                              - 8 -

impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2.    The ALJ Did Not Err by Finding Grube's Subjective Symptom Testimony Not Fully Credible.

Grube contends that the ALJ erred by not properly weighing his subjective complaints.

On August 10, 2007, Grube reported that his daily activities consisted of light housework, picking up his children from school, periodically attending doctors' appointments, and stretching.  He also reported that he cared for his three children, then ages five, twelve, and sixteen, until his wife arrived home from work.  He provided their pets with water and let them go outside when needed.  He was able to dress, bathe, shave, use the toilet, and care for his hair.  He was able to wash dishes, do laundry, vacuum, water plants, and mow the lawn with a self-propelled lawn mower.  He went outside the house two or three times daily, could go out by himself, and could drive a car.  He reported swimming with his family and watching his daughter practice softball.  For hobbies, he sewed, collected baseball cards, and did small auto repairs.  He reported being able to walk 50 to 100 feet before needing to stop for rest and using a cane for walking longer distances.

Grube also reported lack of concentration, poor memory, extreme fatigue, and interrupted sleeping.  He said that he needed to be reminded to bathe and take his medications.  He reported that he prepared meals daily, but cooked less complicated meals than he did before his surgeries.  He said that he went grocery shopping weekly, but took his twelve-year-old daughter with him to assist and keep track of money.  He was able to pay bills, count change, handle a savings account, and use a checkbook/money orders, but received assistance from a family member.  He said that he was able to follow written instructions, but had more difficulty with oral instructions.

1    Regarding pain, Grube reported that he had constant pain in his left groin and low

2    back that caused him to walk with a pronounced limp.  He said that he could only lift

3    about 25 pounds, which caused pain.  When walking, sitting, or laying, he reported

4    having to move every half hour to hour due to discomfort.  He also said that his physical

5    and mental issues had caused severe withdrawal, depression, and mood swings.

6    On February 1, 2020, Grube testified that the pain he experienced felt like he had

7    an ice pick stuck in his groin and that he had to move about every 25 to 30 minutes

8    because of the constant groin pain on his left side.  He said that he could stand about 25 to

9    30 minutes and then could sit for about 25 to 30 minutes before needing to stand or lay

10   down.  He also said that he took two naps during the day, each of which lasted about an

11   hour and a half on average.  Grube also testified that he had been taking antidepressants

12   since 2003 and had received counseling for depression.  He reported taking narcotic pain

13   medication, which helped with the pain but made him very tired.  He said he experienced

14   difficulty with short-term memory problem and concentration.

15   The hearing decision states:

16       The undersigned finds that the claimant's impairments result in mild
         limitations in his activities of daily living.  The claimant reported that he did
17       light housework, picked children up from school, went to doctor's
         appointments and did stretching exercises.  He could dress himself and take
18       care of personal care and prepare simple meals.  He washed dishes,
         vacuumed and did laundry.  He also mowed the lawn, shopped and could
19       take care of finances.  He collected baseball cards and did small repairs on
         cars.  He swims and goes to the grocery store (exhibit 5E).  He could walk
20       up to 100 feet. . . .

21       The claimant testified that he is a high school graduate and worked as a
         police officer for 15 years. . . .  There was pain primarily in the left groin,
22       hips, legs and left abdomen.  There also was peripheral artery disease and
         restless legs. . . .  He stated he could stand for 25 to 30 minutes and sit for
23       that period of time and stated he had to lie down during the day for 3 hours.
         Depression is also alleged and he started recently with a psychiatrist.
24
         The testimony [o]f the claimant is not fully credible concerning the severity
25       and extent of his limitations.  Neither the severity nor the extent is
         supported by the medical evidence or record.
26

27

28                                    - 10 -

1      Thus, the ALJ did not find Grube's testimony regarding his *pain* incredible, but

2   rather he found Grube's testimony regarding the severity and extent of his *limitations* not

3   fully credible.  Further, he did not find Grube's testimony about his limitations not fully

4   credible solely because it was not supported by objective medical evidence, but also

5   because it was not supported by the record, including Grube's own statements.  The ALJ

6   provided specific, clear, and convincing reasons for finding Grube's testimony about the

7   severity and extent of his limitations not fully credible and therefore did not err.

8      **C.   Residual Functional Capacity**

9      Grube contends the ALJ's residual functional capacity assessment does not meet

10  legal standards because it includes the term "unskilled sedentary work."  The use of the

11  term "unskilled sedentary work" here does not violate legal standards because it is

12  coupled with function-by-function assessment and is not used at step four to find that

13  Grube is able to perform past relevant work.

14     A claimant's residual functional capacity is "what an individual can still do despite

15  his or her limitations."  Social Security Ruling 96-8p.  The residual functional capacity

16  determination is "a function-by-function assessment based upon all of the relevant

17  evidence of an individual's ability to do work-related activities."  *Id.*

18     Social Security Ruling 96-8p explains:

19     At step 4 of the sequential evaluation process, the [residual functional
       capacity] must not be expressed initially in terms of the exertional
20     categories of "sedentary," "light," "medium," "heavy," and "very heavy"
       work because the first consideration at this step is whether the individual
21     can do past relevant work as he or she actually performed it.

22     [Residual functional capacity] may be expressed in terms of an exertional
       category, such as light, if it becomes necessary to assess whether an
23     individual is able to do his or her past relevant work as it is generally
       performed in the national economy.  However, without the initial function-
24     by-function assessment of the individual's physical and mental capacities, it
       may not be possible to determine whether the individual is able to do past
25     relevant work as it is generally performed in the national economy because
       particular occupations may not require all of the exertional and
26     nonexertional demands necessary to do the full range of work at a given
       exertional level.

27

28

> At step 5 of the sequential evaluation process, [residual functional capacity] must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

Social Security Ruling 96-8p. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The hearing decision states:

> [T]he claimant has the residual functional capacity to perform unskilled sedentary work with restrictions as sedentary work is defined in 20 CFR 404.1567(a). The claimant requires a sit/stand option, and he has postural limitations involving no crawling, crouching, climbing, squatting or kneeling, and no use of the lower extremities for pushing or pulling.

The Social Security regulation cited, 20 C.F.R. § 404.1567(a), provides the following definition for sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Thus, the residual functional capacity assessment expressly includes functional limitations from the regulation's definition of "sedentary work" and additional functional limitations.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Kristian E. Grube disability benefits.

///

///

///

///

- 12 -

1    IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant

2  against Plaintiff and that Plaintiff take nothing.  The Clerk shall terminate this action.

3    DATED this 3rd day of January, 2012.

4

5    _____

6    Neil V. Wake
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 13 -